No. 23-3565

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

LARRY HOUSEHOLDER,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Southern District of Ohio
Case No. 1:20-cr-77-1

**REPLY BRIEF OF
APPELLANT LARRY HOUSEHOLDER**

Steven L. Bradley
MAREIN & BRADLEY
526 Superior Avenue
Suite 222
Cleveland, Ohio 44114
(216) 781-0722

Nicholas R. Oleski
MCCARTHY, LEBIT, CRYSTAL
 & LIFFMAN CO., LPA
1111 Superior Avenue East,
Suite 2700
Cleveland, Ohio 44114
(216) 696-1422

*Counsel for Larry Householder*

October 23, 2024

{02100209-3}

# TABLE OF CONTENTS

**Page**

Table of Authorities.................................................................. iii

Introduction .......................................................................1

Argument ..........................................................................3

I.    The evidence was insufficient to convict Householder....................3

    A.    The government needed to prove an explicit quid pro quo. ......................................................3

    B.    The government failed to prove an explicit quid pro quo. ........................................................7

II.   The district court violated Householder's Sixth Amendment rights.......................................................13

    A.    Jury de-selection is a critical stage of trial............................13

    B.    A judge may not prohibit a criminal defendant from consulting with his lawyers during an overnight recess......19

III.  The district court incorrectly instructed the jury.........................22

    A.    The state law bribery predicates required an explicit quid pro quo instruction.......................................22

    B.    The district court's federal bribery instructions were erroneous. ...............................................23

IV.   Householder's sentence was improper.........................................25

    A.    The district court miscalculated loss. ...................................25

    B.    The district court's sentence was unreasonable..................27

V.    The judge should have recused. ...................................................28

Conclusion .............................................................31

i

Certificate of Compliance ........................................................................ 32

Certificate of Service ............................................................................... 33

Designation of Relevant District Court Documents ............................... 34

ii

{02100209-3}

# TABLE OF AUTHORITIES

**Page**

## Cases

*Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485 (1984)..........8

*Buckley v. Valeo*, 424 U.S. 1 (1976).............................................................4

*Citizens United v. FEC*, 558 U.S. 310 (2010).......................................4, 5

*E.R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) ............................................................................................................5

*First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978) .........................5

*Jackson v. Cool*, 111 F.4th 689 (6th Cir. 2024).......................................29

*Johnson v. Mississippi*, 403 U.S. 212, (1971) .........................................30

*Mayberry v. Pennsylvania*, 400 U.S. 455 (1971) ....................................30

*McCormick v. United States*, 500 U.S. 257 (1991)...............................2, 6

*McCutcheon v. FEC*, 572 U.S. 185 (2014) .............................................1, 3

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995).......................5

*Moore v. Purkett*, 275 F.3d 685 (8th Cir. 2001) ......................................21

*Mudd v. United States*, 798 F.2d 1509 (D.C. Cir. 1986)........................20

*Perry v. Leeke*, 488 U.S. 272 (1989).........................................................20

*Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989)...................................19

*Railey v. Webb*, 540 F.3d 393 (6th Cir. 2008) ...................................29, 30

*Skilling v. United States*, 561 U.S. 358 (2010) .......................................16

*United States v. Allen*, 10 F.3d 405 (7th Cir. 1993)...............................22

*United States v. Bordallo*, 857 F.2d 519 (9th Cir. 1988) .......................15

iii

*United States v. Ehmer*, 87 F.4th 1073 (9th Cir. 2023) ........................ 14

*United States v. Ewing*, 832 F. App'x 416 (6th Cir. 2020) ..................... 28

*United States v. Gay*, 522 F.2d 429 (6th Cir. 1975) ............................... 16

*United States v. Hanno*, 21 F.3d 42 (4th Cir. 1994) ........................ 14, 16

*United States v. Hunter*, No. 22-5992, 2023 U.S. App. LEXIS 26643 (6th Cir. Oct. 5, 2023) ................................................................... 29

*United States v. Inzunza*, 638 F.3d 1006 (9th Cir. 2011) ...................... 12

*United States v. Johnson*, 267 F.3d 376 (5th Cir. 2001) ........................ 21

*United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011) ........................ 26

*United States v. McKinley*, 227 F.3d 716 (6th Cir. 2000) ...................... 27

*United States v. Menendez*, 291 F. Supp. 3d 606 (D.N.J. 2018) ....... 12, 13

*United States v. Miguel*, 111 F.3d 666 (9th Cir. 1997) .......................... 21

*United States v. Mitchell*, 232 F. App'x 513 (6th Cir. 2007) .................. 26

*United States v. Nelson*, 884 F.3d 1103 (11th Cir. 2018) ...................... 20

*United States v. Perez-Rodriguez*, 960 F.3d 748 (6th Cir. 2020) ........... 28

*United States v. Salahuddin*, 765 F.3d 329 (3d Cir. 2014) ..................... 6

*United States v. Sedore*, 512 F.3d 819 (6th Cir. 2008) .......................... 26

*United States v. Siegelman*, 640 F.3d 1159 (11th Cir. 2011) ..... 4, 6, 7, 11

*United States v. Silver*, 948 F.3d 538 (2d Cir. 2020) ............................. 23

*United States v. Skelos*, 988 F.3d 645 (2d Cir. 2021) ........................ 23, 24

*United States v. Taylor*, 562 F.2d 1345 (2d Cir. 1977) .......................... 13

*United States v. Terry*, 707 F.3d 607 (6th Cir. 2013) ............................ 12

*United States v. Thomas*, 724 F.3d 632 (5th Cir. 2013) ......................... 14

iv

*United States v. Torres*, 997 F.3d 624 (5th Cir. 2021) ...................... 20, 21

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) ........................ 25

*United States v. Wynn*, 485 F. App'x 766 (6th Cir. 2012) ...................... 26

*Williams v. Pennsylvania*, 579 U.S. 1 (2016) .......................................... 29

*Wright v. Holbrook*, 794 F.2d 1152 (6th Cir. 1986) ............................... 19

*Zamora v. Georgia*, 731 S.E.2d 658 (Ga. 2012) ...................................... 14

**Rules**

Fed. R. Crim. P. 51(b) ............................................................................... 17

**Articles**

Ian MacDougall, *"Every Politician Has Got to Have Somebody That's the Hitman,"* New York Times, https://www.nytimes.com/2024/01/25/magazine/ohio-bribery-politics.html (Jan. 25, 2024) ............................................................ 1

{02100209-3}

# INTRODUCTION

The government's star witness at trial, Jeff Longstreth, testified that "almost everybody who is contributing to a political campaign is contributing because they have an issue or potentially could have an issue with their business or, you know, something in their hometown. Everybody has issues or they wouldn't be taking a fundraising meeting." (R. 217, Tr. 16-2555, PageID 7589). And, of course, that's correct: political contributions are *always* premised on what an official will do once elected. While this may "seem repugnant to some," so is "much of what the First Amendment vigorously protects." *McCutcheon v. FEC*, 572 U.S. 185, 191 (2014).

More than thirty years ago, the Supreme Court understood that federal prosecutors may use the federal bribery laws to indict and win convictions based on ordinary political activity.[1] So, the Court required

---

[1] The government's charging decision here reeks of even more overreaching. Instead of indicting Larry Householder on bribery charges, the government charged him with RICO conspiracy explicitly to circumvent the Supreme Court's recent bribery caselaw, which has uniformly rejected the government's overreaching. *See* Ian MacDougall, *"Every Politician Has Got to Have Somebody That's the Hitman,"* New York Times, https://www.nytimes.com/2024/01/25/magazine/ohio-bribery-politics.html (Jan. 25, 2024).

{02100209-3}

the government to prove an "explicit" quid pro quo in this context. *McCormick v. United States*, 500 U.S. 257, 272-73 (1991). It must marshal proof of an *unambiguous* corrupt deal—a clear exchange for official action.

The government failed to prove one here. It relied on speculations and innuendo from witnesses, nearly all of whom had no direct interactions with Householder and the alleged bribers. And, as for the alleged bribers, the jury did not hear any testimony from them[2] nor has the government indicted any of the individuals of allegedly spearheaded this massive bribery scheme.

On this record, the government did not prove an explicit quid pro quo. This Court should vacate Householder's conviction with instructions that the district court enter a judgment of acquittal.

---

The government's efforts to avoid this caselaw failed, however. As explained more below, the government concedes that it must be prove a bribery agreement to uphold Householder's conviction. (Gov't Br. 58-59).

[2] Other than a FirstEnergy corporate representative who explained some SEC filings to the jury.

{02100209-3}

# ARGUMENT

## I.    The evidence was insufficient to convict Householder.

### A.    The government needed to prove an explicit quid pro quo.

Perhaps recognizing that it cannot meet the explicit quid pro quo standard, the government contends—for the first time—that it did not have to prove one. It did.

That FirstEnergy and FES contributed funds to a 501(c)(4), not Householder's official campaign, does not remove this case from the *McCormick* explicit quit pro quo standard. *McCormick*'s special protection for campaign contributions draws on the same underlying concerns reflected in the Court's First Amendment cases. *Compare id.* (Campaign contributions are "unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the nation.") (quotation omitted) with *McCutcheon v. FEC*, 572 U.S. 185, 192 (2014) (It is "a central feature of democracy[ ]that constituents support candidates who share their beliefs and interests, and candidates who are elected can be expected to be responsive to those concerns."). The Eleventh Circuit has interpreted the *McCormick* standard as serving to protect against convictions that "impact the First

{02100209-3}

Amendment's core values." *United States v. Siegelman*, 640 F.3d 1159, 1169-70 (11th Cir. 2011). It follows that the *McCormick* standard should be interpreted considering the Supreme Court's First Amendment jurisprudence, and the Supreme Court has explained that "First Amendment standards . . . must give the benefit of any doubt to protecting rather than stifling speech." *Citizens United v. FEC*, 558 U.S. 310, 327 (2010) (cleaned up).

For this reason, *McCormick* applies here. The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United*, 558 U.S. at 339 (internal citations omitted). The contributions to Generation Now were given and spent for the same political purpose as money donated directly Householder's campaign or the other members of "Team Householder": to help those candidates win office. And similarly, after the 2018 election cycle, the contributions were made to express support for House Bill 6. A donation to Generation Now was a "symbolic expression of support" in the same sense that a donation to a campaign or PAC would have been. *Cf. Buckley v. Valeo*, 424 U.S. 1, 21 (1976) ("A contribution serves as a general expression of support for the candidate and his views, but does not

communicate the underlying basis for the support."). There is no princi-
pled distinction to be made from which a contribution to a campaign seek-
ing to elect Householder to the Ohio House was political speech but a
contribution to a fund seeking to support Householder's agenda (or any-
one else's agenda) was not political speech. *See Citizens United*, 558 U.S.
at 327 ("First Amendment standards . . . must give the benefit of any
doubt to protecting rather than stifling speech.") (citations and quota-
tions omitted).

Put simply, FirstEnergy and FES' contributions to Generation Now
are presumptively protected by the First Amendment. Corporations are
entitled to speak on matters of public concern. *First Nat'l Bank of Bos. v.
Bellotti*, 435 U.S. 765 (1978). This First Amendment right extends to
speech advocating for or against the election of candidates for office. *Cit-
izens United v. FEC*, 558 U.S. 310 (2010). Anonymous political speech
retains constitutional protection. *McIntyre v. Ohio Elections Comm'n*, 514
U.S. 334 (1995). And the fundamental right to petition the government
includes the right to hire lobbyists and consultants to do so. *E.R.R. Pres-
idents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961). Inso-
far as the government argued that various ways in which FirstEnergy

5

engaged in the political process by supporting candidates aligned with its policy goals and advocating for legislation that served its interests, it is describing core First Amendment activity.

True, bribery is not protected by the First Amendment. But to avoid the risk of chilling or even penalizing constitutionally protected conduct, the Supreme Court has held that an exercise of First Amendment rights may be deemed a "bribe" only if there existed an "explicit promise" to trade it for official action. *McCormick v. United States*, 500 U.S. 257, 273 (1991). That is, when a bribery charge "impact[s] the First Amendment's core values," the prosecution must establish an "explicit" agreement that involved a "quid pro quo" for "a specific official action"—not merely a temporal nexus. *United States v. Siegelman*, 640 F.3d 1159, 1169–71 (11th Cir. 2011).

The government's principal case, *United States v. Salahuddin*, 765 F.3d 329 (3d Cir. 2014), does not help the government for two reasons. There, the Third Circuit held, with little analysis, that "*non*-campaign charitable contributions" to two political action committees did not require the *McCormick* explicit quid pro quo requirement. *Id.* at 343 (emphasis added).

6

*First*, Salahuddin concerned "non-campaign" contributions. Not so here. The contributions made to Generation Now were campaign contributions to support Team Householder during the 2018 election cycle and then to campaign and lobby for support for House Bill 6.

*Second*, the Third Circuit's cursory analysis is unpersuasive given the Supreme Court's vigorous defense of political speech through political donations. The Eleventh Circuit's analysis is more on point: "It would be a particularly dangerous legal error from a civic point of view to instruct a jury that they may convict a defendant for his exercise of either of these constitutionally protected activities. In a political system that is based upon raising private contributions for campaigns for public office and for issue referenda, there is ample opportunity for that error to be committed." *United States v. Siegelman*, 640 F.3d 1159, 1169-70 (11th Cir. 2011).

The explicit quid pro quo standard applies here.

## B.    The government failed to prove an explicit quid pro quo.

1.  The Supreme Court's caselaw demands more than proof that a pro-public utility politician supported a donor's legislative agenda. The premise of *McCormick*—the reason campaign-contribution bribery needs its own rule—is that lay juries cannot reliably parse money-in-politics

7

from criminal corruption. The federal courts thus must play a robust role in ensuring that the Government actually carries its *McCormick* burden. Absent a meaningful judicial check, too much of the "everyday business of a legislator" will become fodder for conviction based on a jury's sense of "ethical considerations and appearances." 500 U.S. at 272. And rather than risk it at trial, Americans will stop contributing; elected leaders will stop acting on behalf of their constituents—chilling political speech.

In other words, because *McCormick* accounts for fundamental First Amendment considerations by raising the sufficiency standard for the Government, this Court must ensure that the evidence is sufficient to satisfy that standard—and in so doing, take care to "make sure" the judgment "does not constitute a forbidden intrusion on the field of free expression." *Bose Corp. v. Consumers Union of U.S., Inc*., 466 U.S. 485, 499 (1984).

So even accounting for a jury's leeway, this Court must verify that the evidence reasonably proved a clear and unambiguous exchange. The Supreme Court underscored that while "the intention of the parties is a relevant consideration," it is not the entire analysis. *Id.* at 271. There must be, once more, unmistakable evidence of a corrupt bargain—an

8

"explicit" quid pro quo. Instead, the Government has offered only attenuated inferences from a set of vague stitched together comments across multiple distinct conversations over the course of several years.

That does not suffice.

2. So, the government resorts to distorting the record. A few examples will suffice:

*The Inauguration*. Just as it did at trial, on appeal, the government spins a yarn that the alleged corrupt bargain "was struck over steak dinners in Washington D.C." (Gov't Br. 45). But that's rank speculation that no reasonable jury could credit.

Longstreth testified that he attended two steak dinners with Householder, Chuck Jones, and Mike Dowling. At the first, on January 18,[3] they were at a large table with twenty or so people; Dowling and Longstreth were seated at one end of the table, and Jones and Householder on the other. (R. 217, Tr. 16-2601, PageID 7635). Longstreth could not hear what, if anything, Jones and Householder discussed. (Id.). And

---

[3] The evidence established that Jones was not in D.C. on January 18. (*See* HX 479, App'x 186) (Jones expense report showing flight to D.C. from Florida on January 19). The government's claim (at 45 n.6) that Jones's expense report shows that he was in D.C. on January 18 is false.

9

at the second dinner, they discussed Householder's plan to become and FirstEnergy's problem with its nuclear power plants. (*Id.* at PageID 7638-39). But, as Longstreth explained elsewhere, that's ordinary electoral politics: politicians explain their political positions and donors explain their problems. (*Id.* at PageID 7589). There is nothing criminal there.

*Creation of Generation Now.* Although it is true that Generation Now was formally created after the Inauguration, Longstreth engaged professionals to create the entity about ten days before the Inauguration. (R. 219, Tr. 17-2736, PageID 7837).

*Longstreth's Loan.* The evidence showed, as the government acknowledges (at 50 n.7), that Longstreth made various payments on Householder's behalf using his own accounts—not Generation Now accounts.[4] And Longstreth testified that he expected to be repaid for these

---

[4] The government also presented no evidence about whether Householder knew that Longstreth transferred monies from Generation Now to pay for some of the expenditures.

{02100209-3}

expenditures. (R. 217, Tr. 16-2578, PageID 7612). The government's claim that he did not is, again, false.[5]

*Contributions to Generation Now*. As it did at trial, the government says that FirstEnergy paid Householder directly. But that's simply not true. FirstEnergy and FES contributed monies to Generation Now—not Householder directly. And it did so in two distinct ways: (1) during the 2018 election cycle and (2) during the HB 6 media cycle to contribute to a media campaign to support HB 6. As to the first, scores of other donors contributed millions of dollars to Generation Now—underscoring that this was ordinary activity. And as to the second, FES contributed tens of millions of dollars to fund a media campaign for a piece of legislation that would be beneficial to it. *See United States v. Siegelman*, 640 F.3d 1159, 1169 (11th Cir. 2011).

*Householder's Support for Public Utilities*. The evidence showed that Householder was a longtime support of "the utilities and energy producers in Ohio." (R. 219, Tr. 17-2725-26, PageID 7826-27); (*see also* R. 224, Tr. 19-3051, PageID 8214). And that he had expressed support for

---

[5] Unlike Householder, Longstreth personally pocketed millions of dollars from Generation Now.

"[u]tility relief" *before* FirstEnergy contributed any monies to Generation Now. (*See* GX 212, App'x 3). Although it is no defense that a public official would have taken the same action absent a bribe, that the official—like Householder did here—publicly extolled certain policy positions before receiving any contributions certainly undermines any inference of a corrupt agreement, *see United States v. Menendez*, 291 F. Supp. 3d 606, 628 (D.N.J. 2018) (public official "advocating a policy position consistent with a position he had taken years earlier" not proof of corrupt deal), just as proof of "unusual official actions" can support such an inference, *United States v. Terry*, 707 F.3d 607, 615 (6th Cir. 2013).

Although ordinarily juries may be free to disregard a defendant's alternate explanation, *McCormick* requires the Court to take a closer look—otherwise the Court would be abandoning its duty to ensure that core political speech is not criminalized. The Ninth Circuit recognized as much in affirming vacatur of a bribery conviction under McCormick because (as here) the defendant's conduct could be fairly seen as an "innocent political act." *United States v. Inzunza*, 638 F.3d 1006, 1025 (9th Cir. 2011). This is especially true given Householder's longstanding support for public utilities.

12

*United States v. Menendez*, 291 F. Supp. 3d 606 (D.N.J. 2015), shows the government's faulty logic. The court reasoned that: (i) an official escalating support for a project following a donation is not indicative of wrongdoing; (ii) "strong advocacy" for a project is not either, especially when "consistent with a position" the official had adopted "earlier"; and (iii) using anonymous donations as evidence of criminal activity would "raise[] significant First Amendment concerns." 291 F. Supp. 3d. at 627-32. Offered little more, the court held the case fell short of *McCormick*'s "heightened" evidentiary bar. *Id*. at 631. So too here.

The Court should vacate and remand with instructions that the district court acquit Householder.

## II. The district court violated Householder's Sixth Amendment rights.

### A.    Jury de-selection is a critical stage of trial.

1.  The Sixth Amendment requires a criminal defendant's counsel to be present at all critical stages of the trial. Just as jury selection is a critical stage of the trial, so is jury de-selection.[6] *See United States v.*

---

[6] And, at any rate, a district court's *ex parte* communications with a juror—even if unrelated to the trial—is error. *United States v. Taylor*, 562 F.2d 1345, 1366 (2d Cir. 1977).

{02100209-3}

*Hanno*, 21 F.3d 42, 47 (4th Cir. 1994) ("Considering that an accused has the constitutional right to be present at his jury selection, we think he has the same right to be present at the dismemberment of a jury which previously had been selected in his presence."); *Zamora v. Georgia*, 731 S.E.2d 658, 664 (Ga. 2012) (collecting cases). Because the dismissal of an impaneled trial juror is a critical stage of the trial, defense counsel must be present for that decision.

The government is wrong to suggest otherwise. Indeed, one of the cases on which it relies, explains that a district court's decision to excuse jurors for cause during voir dire is "a 'critical stage' of the proceedings with respect to which, at the very least, Appellants had the right to counsel and the right to be heard." *United States v. Ehmer*, 87 F.4th 1073, 1099 (9th Cir. 2023); *see also United States v. Thomas*, 724 F.3d 632, 643 (5th Cir. 2013) (holding defendant's absence during the exercise of peremptory strikes at voir dire to be error—albeit not plain error). Although the Ninth Circuit found that error to be harmless, its reasoning is distinguishable. There, before in-court voir dire began, the district court, on its own and solely based on the prospective jurors' written questionnaires, dismissed some of the jurors for cause. *Ehmer*, 87 F.4th at 1101. The

14

Ninth Circuit held that there was no need for a hearing in which the jurors could be questioned because the district court's ruling was based only on the written record before it. *Id.* In contrast, the Ninth Circuit previously found error, albeit harmless, when the judge dismissed members of the venire ex parte after "the court's in-person 'question[ing]' of individual jurors 'about their knowledge of a specific case.'" *Id.* (quoting *United States v. Bordallo*, 857 F.2d 519, 523 (9th Cir. 1988)).

This case is more like *Bordallo* than *Ehmer*. Here, Juror No. 4 "*told the Court* that he will not wear a mask, even if the Court required it" and "advised that he is not available to serve any longer than 4:30 p.m. on Friday, March 3." (R. 292-2, Am. Order Completing Record, PageID 11630) (emphasis added). The district court here, like *Bordallo*, was thus dealing with more than a written record; it considered the juror's statements to the court (and presumably under the court's questioning too). Such "in-the-moment voir dire" allows for "a more intimate and immediate basis for assessing a venire member's fitness for jury service," because those present to observe that questioning can directly assess "the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty." *Skilling v. United States*, 561 U.S. 358, 386-

15

87 (2010). Householder and his counsel were denied the right to observe Juror No. 4 and question whether his statements to the court were accurate.

True, the Ninth Circuit found the error harmless in *Bordallo*. But, there, unlike here, the district court dismissed prospective jurors—not an impaneled trial juror in the middle of trial.

Regardless, this Court's published decision in *Gay* compels vacatur. *Gay* holds that it is "error for the District Judge to engage in discussions with members of the jury after it was impaneled and to consider requests for excuses out of the presence of the defendant and without giving notice to defense counsel. *United States v. Gay*, 522 F.2d 429, 435 (6th Cir. 1975). And, this Court vacated the defendant's conviction even though he could not "demonstrate prejudice" because the absence of a record required the court to presume prejudice. *Id.*; *see also United States v. Hanno*, 21 F.3d 42, 47 (4th Cir. 1994) (same).

The same analysis applies here. And as published decision from this Court, *Gay* is binding precedent. It requires vacatur and a new trial.

2. Contrary to the government's claim (at 62-63) Householder did not forfeit his objection to the dismissal of Juror No. 4 nor did the district

16

court afford him the opportunity to object to its decision. "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." Fed. R. Crim. P. 51(b). The district court never gave Householder the opportunity to object to its decision to discharge the juror. A simple timeline shows this:

- January 30, 2023, 3:25pm: Email from the judge's law clerk stating, "*the Court* has decided to cut this juror *now*, and to return tomorrow with 15 jurors" (R. 292-2, Am. Order Completing Record, PageID 11630) (emphasis added). It is undisputed that this was the district court's first communication with counsel about the dismissal of Juror No. 4.

- January 30, 2023, approximately 4:30pm: the judge's law clerk speaks with one of Householder's counsel who did not object to the dismissal of Juror No. 4[7] (*see id.*, Page ID 11643).

-  January 30, 2023, 4:50 pm: Householder objected to the "to the sua sponte discharge of juror # 4 without the Court having at first consulted with the parties" (*id.*).

---

[7] But counsel did explain that they would not object "to a further continuance to await the test results" for Juror No. 4. R. 292-2, Am. Order Completing Record, PageID 11643)

To be sure, the district court, in its communications with counsel in open court and out, proffered that it had not dismissed Juror No. 4 before its law clerk spoke with Householder's counsel. But the record refutes this claim. The court told the parties—before it consulted with anyone—that it "decided to cut this juror *now*, and to return tomorrow with 15 jurors" (R. 292-2, Am. Order Completing Record, PageID 11630) (emphasis added). Thus, when Householder's counsel spoke with the law clerk about an hour after the court's email, there was no need or reason to object to the dismissal. The district court had already issued its ruling. And the court did not solicit counsel's input on that decision. Instead, the district court only asked the parties to weigh in on whether they would agree to wear masks in the courtroom. (*See id.*, PageID 11645). The court did not consult with Householder's counsel—or any other party—before it "decided," at 3:25 pm (or earlier), to "cut" Juror No. 4.

A district judge cannot—without consulting with counsel—engage in ex parte discussions with impaneled trial jurors and then dismiss them. The Constitution and this Court's cases require more. This Court should vacate Householder's conviction.

18

**B.    A judge may not prohibit a criminal defendant from consulting with his lawyers during an overnight recess.**

1. Householder did not forfeit this argument by failing to raise it in his opening brief. Although this Court "normally decline[s] to consider issues not raised in the appellant's opening brief," *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989), the Court's rule emanates from due process principles: the opposing party is "deprived of an opportunity to address the issue," *Wright v. Holbrook*, 794 F.2d 1152, 1157 (6th Cir. 1986).

The government has not been deprived of an opportunity to address this issue. Householder submitted his supplemental brief months before the government filed its appellate brief, and the government's brief fully addresses the argument on the merits. There is, thus, ample reason for the Court to consider Householder's supplemental brief on its merits.

2. A court cannot prohibit a defendant from consulting with counsel about his testimony during an overnight recess. The district court did just that here.

That the court permitted Householder to "speak with [his] attorneys," (R. 228, Tr. 21-3441, PageID 8611), does not prevent vacatur. The

19

district court imposed a blanket prohibition on Householder from "discuss[ing] [his] testimony during the break." (*Id.*). Its carveout that Householder could "speak" with his counsel was just that: a carveout. In other words, Householder could not discuss his testimony, but could speak to his lawyers about other matters.

Householder's failure to object is not dispositive either. The government primarily relies[8] on *United States v. Nelson*, 884 F.3d 1103 (11th Cir. 2018), to argue that Householder must have shown that he wanted to consult with counsel. The Eleventh Circuit's decision is wrong. The other Circuits that have considered *Geders* errors have not required the defendant to show that he would have or wanted to consult with counsel. *E.g.*, *United States v. Torres*, 997 F.3d 624, 628 (5th Cir. 2021); *Mudd v. United States*, 798 F.2d 1509, 1513 (D.C. Cir. 1986) (adopting a per se rule that "reversal is required" following a Geders violation as the

---

[8] The government also cites *Stubbs v. Bordenkircher*, 689 F.2d 1205, 1207 (4th Cir. 1982), and *Bailey v. Redman*, 657 F.2d 21, 23-24 (3d Cir. 1981). But those decisions predate *Perry*. There, the Supreme Court explained thatw here a true Geders violation occurs, it requires reversal per se; the error "is not subject to . . . [a] prejudice analysis" because of the "fundamental importance of the criminal defendant's constitutional right to be represented by counsel." *Perry v. Leeke*, 488 U.S. 272, 279 (1989).

approach that "best vindicates the right to the effective assistance of counsel"); *United States v. Johnson*, 267 F.3d 376, 379 (5th Cir. 2001) (explaining that, in *Perry*, the Supreme Court "held that a showing of prejudice is not an essential component of establishing a violation of the *Geders* rule" and expressing support for that view as "the constitutional right to counsel warrants the most zealous protection"); *Moore v. Purkett*, 275 F.3d 685, 689 (8th Cir. 2001) (explaining that a *Geders* violation is "reversible without a showing of prejudice"); *United States v. Miguel*, 111 F.3d 666, 673 (9th Cir. 1997) (noting that, where a *Geders* violation occurs, the violation constitutes "a denial of the assistance of counsel 'altogether' so as to require reversal with no showing of prejudice").

*Nelson* is the only case post-*Perry* the government cites that upheld a defendant's conviction when the district court prevents the defendant from consulting with counsel during an overnight recess. This error is thus plain.

And even if Householder is required to meet the third and fourth prongs of the plain error test, he does. *See Torres*, 997 F.3d at 628-629 (finding plain error).

## III.    The district court incorrectly instructed the jury.

### A.    The state law bribery predicates required an explicit quid pro quo instruction.

Because *McCormick*'s reasoning emanates from the First Amendment, its requirement that the government prove an explicit quid pro quo when the quo is a campaign contribution applies to any bribery prosecution—whether in State or federal court. *See United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993) ("Given the minimal difference between extortion under color of official right and bribery, it would seem that courts should exercise the same restraint in interpreting bribery statutes as the *McCormick* Court did in interpreting the Hobbs Act: absent some fairly explicit language otherwise, accepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an explicit promise to perform or not perform an official act. Vague expectations of some future benefit should not be sufficient to make a payment a bribe."); *see also* § I.A *infra*.

The district court thus erred in refusing to instruct the jury that the State law bribery predicate required an explicit quid pro quo.

{02100209-3}

**B.    The district court's federal bribery instructions were erroneous.**

1. Contrary to the government's claim, the court's instructions permitted the jury to convict on an open-ended promise. A district court errs if its instructions permit the jury to find a bribery based on "an open-ended promise to perform official actions for the benefit of the payor." *United States v. Silver*, 948 F.3d 538, 559 (2d Cir. 2020); *see also United States v. Skelos*, 988 F.3d 645, 656 (2d Cir. 2021) (finding error where the jury was not required to find that "*at the time the defendant accepted the relevant payment*, he understood he was expected 'to take official action on a specific and focused question or matter as the opportunities to take such action arose'") (emphasis added). Householder asked the district court, consistent with *Silver* and *Skelos*, to instruct that "this explicit quid pro quo agreement must exist at the time, at the time that the bribe was paid. It cannot be formed later." (R. 237, Tr. 23-3661, PageID 9354).

Like in *Silver* and *Skelos*, the district court instructed the jury that it was enough if "the public official understood the agreement was to take a specific official action on the payor's behalf when the opportunity presented itself." (R. 237, Tr. 23-3730, PageID 9423). But this left open the possibility that the jury could find that Householder was expected to take

official action "on *any* question or matter in return for the payment." *Skelos*, 988 F.3d at 656. This rendered the instruction erroneous.

2. The district court failed to convey the agreement requirement to the jury. It told the jury to find the public official bribery predicates that the jury needed to find a bribery exchange, meaning "*either*: one, a public official's solicitations of things of value in exchange for performing or agreeing to perform specific official action; *or* two, a public official's receipt of things of value when the public official knows that the person who gave the thing of value was doing so in return for the public official performing *or* agreeing to perform a specific official action." (R. 237, Tr. 3728, PageID 9421) (emphasis added).[9] This multi-part bribery definition is erroneous. The district court's definition rejected the requirement that a bribery is an *agreement* between the briber and bribee; its definition permitted the jury to find a bribery if Householder, as the government urged during closing, simply "receive[d] money knowing that the bribe payor is giving that money with the *expectation* that they will get legislation or official action, that's bribery." (R. 238, Tr. 24-3791, PageID

---

[9] The court told the jury that its instructions of bribery applied to the Hobbs Act extortion predicate too. (R. 237, Tr. 3735, PageID 9428)

9484). In other words, the government insisted the jury find a bribery if Householder "receive[d] the money knowing that the expectation was legislation in return." (*Id.*, PageID 9485). But an expectation is not, by definition, an agreement. What is required is an objective, agreed-upon exchange. Whether one calls it a promise, an agreement, or an understanding, there must be an express or implicit this for that. *McCormick*, 500 U.S. at 273. That is the essence of bribery—not a generalized expectation.

## IV.    Householder's sentence was improper.

### A.    The district court miscalculated loss.

The value of the bribe is not $60 million. The government does not dispute that it needed to show that each individual contribution was a bribe, but all it offers is its generalized evidence of bribe. It does not analyze the contributions on a contribution by contribution basis to decide whether each was, in fact, a bribe. That's what is required and the government (and the district court) failed to do so. "An error with respect to the loss calculation is a procedural infirmity that typically requires remand." *United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010).

True, if the district court would have imposed the same sentence regardless, the error is harmless. (Gov't Br. 95). But the court would have

25

had to do much heavier lifting to justify an upward departure of ten levels (if the loss is zero).[10] The court would have had provide "its specific reasons for an upward departure or variance." *United States v. Johnson*, 640 F.3d 195, 206 (6th Cir. 2011) (quoting *United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008)). It did not do so here.

Nor do the government's arguments about the alleged benefit to FirstEnergy hold water. The PSR never calculated the benefit, Householder never briefed it in the district court, and the government did not object to PSR and ask the court to calculate the benefit to FirstEnergy. The government thus waived this argument. *See United States v. Wynn*, 485 F. App'x 766, 772 (6th Cir. 2012) (finding that the defendant waived any objection to the classification of his conviction and could not challenge it as a predicate offense on remand); *United States v. Sedore*, 512 F.3d 819, 827 (6th Cir. 2008) (holding that the defendant waived any argument that there was only one victim for sentencing-enhancement purposes because he did not raise it in his first appeal or resentencing hearing); *United States v. Mitchell*, 232 F. App'x 513, 517 (6th Cir. 2007)

---

[10] Householder's total offense level was 50. Assuming the loss were zero, Householder's total offense level would be 28 (78-97 months).

26

("Because [the defendant] did not object to the district court's application of the enhancement under [U.S.S.G.] § 2K2.1(b)(5) in his prior appeal, [he] is foreclosed from raising the objection now."); *United States v. McKinley*, 227 F.3d 716, 718 (6th Cir. 2000) (holding that the [***24] government waived the application of a sentence enhancement by abandoning it in the first appeal)

The district court did not calculate loss correctly. Remand is required.

### B.    The district court's sentence was unreasonable.

The district court's draconian, maximum sentence is substantively unreasonable. A long and harsh sentence on a senior citizen with virtually no criminal record serves no purpose. Although district judges certainly have great discretion in imposing sentence, that discretion is not unlimited.

This is especially true given the sentencing disparities the district court created—nationally and in this case. Two of Householders' alleged co-conspirators have not yet been sentenced (but they face little to no custodial time), another (Matt Borges) received a five-year sentence, and the remaining alleged co-conspirators still have not even been charged.

27

And nationally, most defendants in public corruption cases received less than a 10-year sentence. (*See* R. 279, Householder Sent. Mem., PageID 11055-56).

The government's claim that this is unreviewable is wrong. "[T]he substantive reasonableness inquiry determines if the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a) and asks whether the district judge abused his discretion in determining that the § 3553(a) factors supported the sentence imposed." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (cleaned up). A sentence of this magnitude "must be buttressed by a correspondingly substantial justification supported by the record." *United States v. Ewing*, 832 F. App'x 416, 420 (6th Cir. 2020). As in *Ewing*, the court did not justify its sentence.

## V.     The judge should have recused.

A fair trial is a basic requirement of due process, and fairness requires the judicial officer to be unbiased. The district judge presiding over Householder's trial was biased and his failure to recuse requires a new

{02100209-3}

trial.[11] During two contentious campaigns to be elected to the Ohio Supreme Court, Judge Timothy Black—the presiding judge of Householder's trial was the subject of negative campaign ads and Householder's own criticism. The Due Process Clause required him to recuse.

That Judge Black may not have been aware of the negative campaign ads and Householder's involvement (which seems doubtful), as the government claims, does not matter. This is because courts ask "whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (cleaned up). What Judge Black subjectively knew or believed is immaterial. *See Jackson v. Cool*, 111 F.4th 689, 696 (6th Cir. 2024).

Even though the news articles upon which Householder relies are not part of the district court record, this Court should either consider them or exercise its equitable power to supplement the record. S*ee United States v. Hunter*, No. 22-5992, 2023 U.S. App. LEXIS 26643, at *2 (6th Cir. Oct. 5, 2023) (identifying when the court may exercise its equitable

---

[11] As the government points out in its brief, claims of judicial bias are not subject to waiver and are not reviewed for harmless error. *Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008).

powers). After all, claims of judicial bias cannot be waived. *See Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008). So, the Court should consider those articles—especially because their premise, that Householder raised monies for groups that opposed Judge Black's election, was not denied by Judge Black during trial. (R. 197, Tr. 390, PageID 4948-49).

When a judge—as Judge Black was—"becomes embroiled in a running, bitter controversy" with one of the litigants, *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971), or becomes "so enmeshed in matters involving [a litigant] as to make it appropriate for another judge to sit," *Johnson v. Mississippi*, 403 U.S. 212, 215-16 (1971). Judge Black lost an election in which he was opposed by Householder and in which Householder raised money to oppose Judge Black's election. A reasonable judge would almost certainly not be neutral—especially because the facts of this case (raising contributions for 501(c)(4) groups) is exactly what Judge Black experienced when he ran for Ohio's high court.

Judge Black should have recused. Because he did not, the Court should vacate Householder's conviction.

## CONCLUSION

The Court should reverse Householder's conviction and either remand for a new trial or with instructions to enter a judgment of acquittal. Alternatively, the Court should vacate Householder's sentence and remand for resentencing.

Dated: October 23, 2024              Respectfully submitted,

*/s/ Steven L. Bradley*
Steven L. Bradley (0046622)
MAREIN & BRADLEY
526 Superior Avenue, Suite 222
Cleveland, Ohio 44114
Phone: (216) 781-0722
Email: steve@mareinandbradley.com

*/s/ Nicholas R. Oleski*
Nicholas R. Oleski (0095808)
MCCARTHY, LEBIT, CRYSTAL
  & LIFFMAN CO., LPA
1111 Superior Avenue East
Suite 2700
Cleveland, Ohio 44114
Phone: (216) 696-1422
Email: nro@mccarthylebit.com

*Counsel for Larry Householder*

31

## CERTIFICATE OF COMPLIANCE

This brief contains 6,045 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Nicholas R. Oleski*
Nicholas R. Oleski

*Counsel for Larry Householder*

{02100209-3}

## CERTIFICATE OF SERVICE

I certify that on October 23, 2024, I filed the foregoing electronically with the Clerk of the United States Court of Appeals for the Sixth Circuit. The Court's ECF system will automatically generate and send by email a Notice of Docket Activity to all registered attorneys currently participating in this case, constituting service on those attorneys.

*/s/ Nicholas R. Oleski*
Nicholas R. Oleski

*Counsel for Larry Householder*

33

## DESIGNATION OF
## RELEVANT DISTRICT COURT DOCUMENTS

| R. | Description | Page ID |
|---|---|---|
| 5 | Redacted Complaint | 91-172 |
| 22 | Indictment | 1247-1289 |
| 63 | Juan Cespedes Plea Agreement | 1415-1421 |
| 64 | Jeffrey Longstreth Plea Agreement | 1422-1428 |
| N/A | Minute Entry as to Juan Cespedes (10/29/2020) | N/A |
| N/A | Minute Entry as to Jeff Longstreth (10/29/2020) | N/A |
| 78 | Generation Now Plea Agreement | 1558-1565 |
| N/A | Minute Entry as to Generation Now, Inc. (02/19/2021) | N/A |
| 88 | Order Granting Motion to Dismiss Neil Clark | 1591 |
| 104 | Motion to Strike Prejudicial Surplusage from Indictment by Matthew Borges | 1734-1753 |
| 105 | Motion to Dismiss the Indictment by Larry Householder | 1754-1770 |
| 107 | Motion to Strike Surplusage from Indictment by Larry Householder | 1784-1791 |
| 110 | Response in Opposition to Motion to Strike Surplusage | 2534-2536 |
| 112 | Response in Opposition to Motion to Dismiss Indictment | 2548-2584 |
| 113 | Response in Opposition to Motion to Strike Prejudicial Surplusage | 2585-2606 |

{02100209-3}

| R. | Description | Page ID |
|---|---|---|
| 115 | Reply to Response to Motion to Stike Prejudicial Surplusage | 3356-3376 |
| 116 | Reply to Response to Motion to Dismiss Indictment | 3377-3390 |
| 117 | Reply to Response to Motion to Sever Defendant | 3391-3394 |
| 122 | Notice of Disclosure of Subjects of Potential Expert Testimony | 3456-3457 |
| 129 | Motion to Exclude Irrelevant and Inadmissible Expert Testimony | 3580-3594 |
| 133 | Response in Opposition to Motion to Exclude Expert Testimony | 3730-3741 |
| 135 | Reply to Response to Motion to Exclude Expert Testimony | 3744-3748 |
| 138 | Motion in Limine to Preclude Argument and Evidence Supporting Jury Nullification | 3759-3772 |
| 141 | Motion in Limine to Exclude Certain Alleged Co-Conspirator Hearsay | 3788-3798 |
| 142 | Motion in Limine to Exclude Certain Prejudicial Evidence and Argument | 3799-3806 |
| 144 | Response in Opposition to Motion in Limine to Exclude Certain Alleged Co-Conspirator Hearsay | 3811-3830 |
| 145 | Response in Opposition to Motion in Limine to Exclude Certain Prejudicial Evidence and Argument | 3831-3834 |
| 150 | Response in Opposition to Motion in Limine to Preclude Argument n Evidence Supporting Jury Nullification | 3853-3863 |

{02100209-3}

| R. | Description | Page ID |
|---|---|---|
| 153 | Reply to Response to Motion in Limine to Preclude Argument and Evidence Supporting Jury Nullification | 3876-3884 |
| 157 | Reply to Response to Motion in Limine to Exclude Certain Prejudicial Evidence and Argument | 3900-3903 |
| 158 | Reply to Response to Motion in Limine to Exclude Certain Alleged Co-Conspirator | 3904-3908 |
| 159 | Notice of Supplemental Authority in Support of Motion to Dismiss Indictment | 3909-3911 |
| 160 | Notice of Government's Response to Defendant Householder's Supplemental Authority in Support of Motion to Dismiss Indictment | 3912-3913 |
| 161 | Order resolving Motions in Limine | 3914-3937 |
| 168 | Order Resolving Parties' Motions to Exclude/Limit Testimony of Expert Witnesses | 3945-3970 |
| 172 | Order Denying Motion to Dismiss as to Larry Householder | 4003-4015 |
| 174 | Proposed Jury Instructions by Larry Householder, Matthew Borges | 4030-4118 |
| 175 | Proposed Jury Instructions by USA | 4119-4164 |
| 177 | Trial Brief by USA | 4310-4335 |
| 178 | Response to Trial Brief | 4336-4347 |

{02100209-3}

| R. | Description | Page ID |
|---|---|---|
| 180 | Final Pretrial Order | 4349-4359 |
| 181 | Motion to Exclude Plea Agreements, Cooperation Agreements, and Immunity Orders | 4360-4369 |
| 182 | Transcript of Proceedings, Final Pretrial Conference | 4370-4461 |
| 184 | Response in Opposition as to Motion to Exclude | 4464-4474 |
| 187 | Reply to Response in Opposition as to Motion to Exclude | 4482-4494 |
| N/A | Minute Entry for voir dire (01/20/2023) | N/A |
| 191 | Trial Transcript Day 1 | 4512-4677 |
| 192 | Notice of Objections to Proposed Jury Instructions by USA | 4678-4692 |
| 193 | Notice of Defendants' Objections to Government's Proposed Jury Instructions | 4693-4712 |
| 194 | Trial Transcript Day 2 | 4713-4926 |
| N/A | Not. Order, Jan. 29, 2023 | N/A |
| 197 | Trial Transcript Day 3 | 4940-5145 |
| 198 | Trial Transcript Day 4 | 5146-5352 |
| 199 | Trial Transcript Day 5 | 5353-5494 |
| 201 | Trial Transcript Day 6 | 5500-5692 |
| 202 | Trial Transcript Day 7 | 5693-5825 |

| R. | Description | Page ID |
|---|---|---|
| 205 | Trial Transcript Day 8 | 5939-6065 |
| 206 | Trial Transcript Day 9 | 6066-6269 |
| 208 | Trial Transcript Day 10 | 6474-6638 |
| 211 | Trial Transcript Day 11 | 6642-6853 |
| 212 | Trial Transcript Day 12 | 6854-7037 |
| 213 | Trial Transcript Day 13 | 7038-7112 |
| 214 | Trial Transcript Day 14 | 7113-7264 |
| 216 | Trial Transcript Day 15 | 7415-7542 |
| 217 | Trial Transcript Day 16 | 7543-7736 |
| 219 | Trial Transcript Day 17 | 7804-7980 |
| 220 | Trial Transcript Day 18 | 7981-8047 |
| 224 | Trial Transcript Day 19 | 8110-8258 |
| 225 | Trial Transcript Day 20 | 8259-8378 |
| 226 | Proposed Jury Instructions by Larry Householder | 8379-8381 |
| 227 | Proposed Jury Instructions by USA | 8382-8385 |
| 228 | Trial Transcript Day 21 | 8386-8612 |
| 229 | Trial Transcript Day 22 | 8613-8818 |

{02100209-3}

| R. | Description | Page ID |
|---|---|---|
| 237 | Trial Transcript Day 23 | 9342-9462 |
| 238 | Trial Transcript Day 24 | 9463-9618 |
| 239 | Trial Transcript Day 25 | 9619-9662 |
| 240 | Trial Transcript Day 26 | 9663-9673 |
| 260 | Jury Instructions | 10572-10645 |
| 261 | Jury Verdict as to Larry Householder | 10646 |
| 263 | Jury Verdict as to Matthew Borges | 10648 |
| 278 | Sentencing Memorandum by USA as to Larry Householder | 10995-11031 |
| 279 | Sentencing Memorandum by Larry Householder | 11032-11073 |
| 283 | Supplemental Memorandum Supporting Sentencing Memorandum by Larry Householder | 11137-11156 |
| 284 | Order Denying Motion to Strike as to Matthew Borges | 11157-11167 |
| 285 | Transcript of Proceedings as to Larry Householder Sentencing Hearing | 11168-11225 |
| 286 | Transcript of Proceedings as to Matthew Borges Sentencing Hearing | 11226-11284 |
| 288 | Judgment as to Larry Householder | 11308-11314 |
| 292 | Am. Order Completing the Record | 11330-11331 |

{02100209-3}

| R. | Description | Page ID |
|---|---|---|
| 292-1 | Am. Order Completing the Record Attachment A | 11537-11628 |
| 292-2 | Am. Order Completing the Record Attachment B | 11629-11649 |
| 293 | Notice of Appeal | 11650-11651 |
| 298 | Transcript of Proceedings, voir dire | 11661-11893 |