No. 23-3565

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

LARRY HOUSEHOLDER,

*Defendant-Appellant*.

**On Appeal from the United States District Court
for the Southern District of Ohio
Case No. 1:20-cr-77-1**

_____

**APPLICATION OF DEFENDANT-APPELLANT LARRY HOUSEHOLDER
FOR PANELRECONSIDERATION
AND FOR RECONSIDERATION EN BANC**

_____

Steven L. Bradley
MAREIN & BRADLEY
1300 East 9th Street, Suite 1000
Cleveland, Ohio 44114
(216) 781-0722

*Counsel for Larry Householder*

June 27, 2025

TABLE OF CONTENTS

Table of Authorities ................................................................................... iii, iv

Rule 40 Statement ...............................................................................................1

Argument..............................................................................................................2

  **First Issue for Reconsideration and En Banc Review:** .......................................2

    **When a Guilty Verdict Could Have Been Premised Solely on An Incorrect Jury Instruction, Can the Error Be Harmless?**

  **Second Issue for Reconsideration and En Banc Review:** ................................7

    **Does a District Court Err in Engaging in an Ex Parte Discussion With A Petit Juror and Then Dismissing The Juror Without Giving the Defense Prior Notice and an Opportunity to Be Heard?**

Conclusion ........................................................................................................12

Certificate of Compliance .................................................................................12

Certificate of Service ........................................................................................13

Appendix:  Opinion of the Court:  United States v. Householder et al., 137 F.4th 454 (per curiam) (May 6, 2025).

ii

# TABLE OF AUTHORITIES

**CASES**

*Chapman v. California,* 386 U.S. 18 (1967)................................................... 1, 6, 7

*Gomez v. United States,* 490 U.S. 858 (1989) ..............................................................9

*Neder v. United States,* 527 U.S. 1 (1999)....................................................................7

*United States v. De Oleo,* 697 F.3d 338 (6th Cir. 2012)........................................9, 11

*United States v. Gay,* 522 F.2d 429 (6th Cir. 1975)................................... 2, 8, 9, 10

*United States v. Helton,* 35 F.4th 511 (6th Cir. 2022) ..................................... 9, 10, 11

*United States v. Lawrence,* 735 F.3d 385 (6th Cir. 2013) ..........................................5

*Van v. Jones,* 475 F.3d 292 (6th Cir. 2007) ..................................................................9

**Statutes**

18 U.S.C. 1343..............................................................................................................2

18 U.S.C. 1346..............................................................................................................2

18 U.S.C. 1951..............................................................................................................2

18 U.S.C. 1952..............................................................................................................2

18 U.S.C. 1956..............................................................................................................2

18 U.S.C. 1957..............................................................................................................3

Ohio Revised Code 2921.02 .......................................................................................3

**Rules**

Fed. R. App. P. 40 ................................................................................................1, 2

Fed. R. Crim. P. 43 ....................................................................................................8

**Constitutional Provisions**

Sixth Amendment, United States Constitution ....................................................9, 10

# MEMORANDUM IN SUPPORT OF RECONSIDERATION AND RECONSIDERATION EN BANC

## INTRODUCTION

Larry Householder, through undersigned counsel and pursuant to FRAP 40, hereby applies for panel rehearing and rehearing en banc.

## RULE 40 STATEMENT

The first two issues meet the criteria set forth in FRAP 40 for en banc review:

The first issue is whether an incorrect jury instruction can constitute harmless error if the record does not demonstrate that the jury's verdict was reached without reliance upon the instruction? The panel's determination of harmless error was legally incorrect and is also mistaken about the procedural circumstances regarding the prosecution's closing argument.

The first issue qualifies for en banc review because, as discussed below, it conflicts with the harmless error jurisprudence of the United States Supreme Court, including as set forth in *Chapman v. California,* 386 U.S. 18 (1967). It is also a matter of exceptional importance. Fed. R. App. P. 40(b)(2).

The second issue is whether a trial court errs in dismissing a petit juror via an ex parte colloquy with the juror and without providing the defense the opportunity to be heard and to object prior to the juror's dismissal? The panel's

1

determination that no error occurred is contrary to this Court's published decision in *United States v. Gay,* 522 F.2d 429 (6th Cir. 1975). The intra-circuit split created by the decision in the instant case is also why en banc consideration is required to maintain uniformity of this Court's decisions. Finally, the issue is one of exceptional importance. Fed. R. App. P. 40(b)(2).

## ARGUMENT

### FIRST ISSUE FOR RECONSIDERATION AND EN BANC REVIEW: HARMLESS ERROR WITH RESPECT TO STATE BRIBERY JURY INSTRUCTION

The jury deciding whether Larry Householder engaged in a RICO conspiracy was told that Mr. Householder could not be found guilty unless the jury found beyond a reasonable doubt that he agreed that he or another would engage in at least two forms of racketeering activity. In this regard, the jury was given seven options, from which they need only find two:

(a) Public-official honest services fraud, 18 U.S.C. § 1343,

(b) Private honest services fraud, 18 U.S.C. § 1346,

(c) Hobbs Act extortion, 18 U.S.C. § 1951,

(d) Travel Act violation, 18 U.S.C. § 1952,

(e) Money laundering, 18 U.S.C. § 1956,

2

(f) Engaging in monetary transactions in property derived from specified unlawful activity, 18 U.S.C. § 1957, and

(g) State law bribery, Ohio Revised Code, §2921.02.

If the jury found beyond a reasonable doubt that any two of these theories existed, they could stop their inquiry in this regard. Thus, for example, the jury could have said in their deliberations, "is everyone satisfied that an agreement to commit state bribery has been proven? Alright, let's see if we can find one more." And, upon the jury's then finding that an agreement as to one more theory of racketeering activity was proven beyond a reasonable doubt, the jury could then have concluded, "we're finished with that aspect of the judge's instructions," without ever looking to see if there was an agreement by Mr. Householder that he or another would engage in any of the other five theories of racketeering activity.

Moreover, because RICO conspiracy was the only charge in the one-count indictment pending against Mr. Householder, the jury was not required to examine and make factual determinations regarding any other theory racketeering activity. And because the jury was not provided a verdict interrogatory (although the defense had so requested, R.237 PageID 9386), there is no way of knowing which two (or perhaps more) theories of racketeering activity were the subject of an agreement by Mr. Householder.

3

And that creates a problem in this case. The panel has held, correctly, that the instructions regarding state bribery violated the First Amendment by not including a quid pro quo requirement. So, the jury could have found the agreement to commit state bribery without having to find a quid pro quo. Thjs means the jury's verdict could have been founded on the state bribery theory and only one other theory – in which case the jury only found an agreement as to one theory of racketeering activity that passes constitutional muster. Which is not enough to sustain a conviction.

In affirming the conviction, the panel held that any error was harmless because the jury would have found a quid pro quo in any event. The panel bases this conclusion on:

(1) the fact that quid pro quo was included in the instructions on the racketeering theories of extortion and honest services fraud and there was sufficient evidence in support of those theories, and

(2) the panel's observation that, in closing argument, both parties argued that quid pro quo was required.

Respectfully, the Court's harmless error analysis is erroneous. That the notion of quid pro quo was included in the racketeering theories of extortion and honest services fraud means nothing if the jury never even examined those theories

4

because it had already counted to "1" on the basis of state bribery law and then stopped counting at "2" (regardless of whether extortion or honest services qualified as number "2" in the jury's calculus). And, if the jury followed the trial court's instructions, as it is presumed to have done, *United States v. Lawrence,* 735 F.3d 385 (6th Cir. 2013), then the fact that quid pro quo was included elsewhere and not included with respect to state bribery would have signaled to the jury that a quid pro quo was *not* a requirement for state bribery – which is precisely what the panel correctly held is erroneous.

The panel reliance upon the parties' closing arguments to the jury to serve as a supplemental jury instruction that impressed upon the jury the need for a quid pro quo as to the state bribery charge is misplaced. First, the panel mischaracterizes the government's closing argument as one that consistently impressed upon the jury the need for a quid pro quo. To the contrary, the government repeatedly argued (R. 238, Page ID 9484, 9485, 9495, 9500, 9504, 9535, 9538) that Mr. Householder was guilty because he received money knowing that the payor, i.e. First Energy, had an expectation that Householder would take certain action – which is contrary to the mutuality that earmarks a quid pro quo, i.e. where Mr. Householder agrees to take action in return for the money.

5

Moreover, the jury was specifically instructed, as would be expected, that any argument by counsel that differed from the trial court's legal instruction would have had to be disregarded. (T. 237, PageID 9395). And, as the panel recognizes, the district court's instruction regarding state bribery failed to include a quid pro quo tenet.

In the end, harmless error is about whether this Court can conclude beyond a reasonable doubt that the "error did not contribute to the verdict obtained." *Chapman v. California,* 386 U.S. 18, 24 (1967). Instead of applying this test, the panel effectively substituted its judgment for the jury's by finding that there was sufficient evidence of a quid pro quo, even if that evidence were never considered by the jury and despite the defense having contested every theory of racketeering presented. The panel decision fails to adequately appreciate that sufficiency of the evidence does not equate to a jury's consideration of that evidence.

Here, the panel's harmless error conclusion requires an illegal stretch, either to believe that the jury took action it was not required to take (i.e. considering more than two racketeering theories) or that the jury gleaned a quid pro quo codicil to the state bribery instruction from something that was said in closing argument (while ignoring what the government said in this regard). Because neither of these assumptions is permitted, the panel should reconsider its harmless error analysis.

6

Alternatively, this Court, en banc, should reconsider the matter because the panel misinterprets the *Chapman* harmless error standard. In so doing, this Court will take on a significant issue regarding how this Court, or any court of appeals should address the question of harmless error. In the almost 60 years since *Chapman* was decided, courts have continued to struggle with what it means for an error to be harmless. Indeed, even the harmless error case cited by the panel, *Neder v. United States,* 527 US. 1 (1999) generated three separate opinions on that question. *Compare,* opinion of the Court (Rehnquist, C.J., O'Connor, Kennedy, Thomas, Breyer, JJ.) *with* opinion of Stevens, J. (concurring in part), *with* opinion of Scalia, J. (concurring in part and dissenting in part, jointed by Souter, Ginsburg, JJ.).

### SECOND ISSUE FOR RECONSIDERATION AND EN BANC REVIEW:  DISMISSAL OF PETIT JUROR WITHOUT PRIOR NOTICE TO COUNSEL

The panel was not free to ignore a published opinion of this Court regarding the impropriety of dismissing a juror without providing defense counsel an opportunity to be heard in advance of the dismissal. Yet that is what happened in the instant case.

The district court erred when it dismissed Juror No. 4 without allowing Mr. Householder the opportunity to be heard. The district court was required to take a

one-week continuance early in the trial because a trial juror tested positive for COVID-19. (R. N/A, Not. Order, January 29, 2023, continuing trial). At approximately 3:25 p.m. the following Monday, January 30, 2023, the district court, via email, informed counsel that Juror No. 4 had not received the results from his COVID test, would not wear a mask, and would be unable to serve beyond March 3rd. (R. 292-2, Am. Order Completing the Record, PageID 11630). Without waiting for input from the parties, the district court's email further announced that it "has decided to cut this juror now, and to return tomorrow with 15 jurors." (*Id.*). Approximately 90 minutes later, the defense objected, noting that it had been prevented from presenting to the district court less extreme measures than dismissal of the juror. (R. 197, Tr. 383, PageID 4942).

This Court addressed the same issue in *United States v. Gay,* 522 F.2d 429 (6th Cir. 1975). There, the district court excused three jurors between jury selection and opening statement without consulting the defense. Relying on Fed. R. Crim. P. 43, this Court held that the dismissal of the three jurors without providing the defense with an opportunity to be heard prior to the dismissal denied the defendant their right to be present at all stages of the proceedings. *Gay's* logic would also extend to a defendant's Sixth Amendment right to be present at all stages of the critical proceedings. *See, Gomez v. United States,* 490 U.S. 858, 873 (1989) (jury

8

selection is critical stage), *Van v. Jones,* 475 F.3d 292, 313 (6th Cir. 2007) (critical stage is one where "reasonable probability" that "total denial of counsel" carries "significant consequences.").

In rejecting Mr. Householder's appeal of the dismissal of Juror No. 4, the panel ignored *Gay* and relied upon two other decisions of this Court, *United States v. De Oleo,* 697 F.3d 338, 341 (6th Cir. 2012) and *United States v. Helton,* 35 F.4th 511, 523 (6th Cir. 2022). But, in both cases, the trial court's decision to strike the juror was made after consideration of counsel's objection. Moreover, in both of those cases it appears that the trial court's inquiry of the juror about the juror's continued ability to serve was done in open court with the parties present. In *De Oleo,* the opinion states that Juror 12 expressed concern during voir dire about not missing the first day of the next semester of her college studies, a concern the trial court stated on the record – and without objection from the defense -- was legitimate. When the trial lasted longer than expected and it was obvious that Juror 12 would miss class, she was excused over objection. Similarly, in *Helton,* the juror spoke on the record to the trial court about having recognized a witness during the witness' testimony, which prompted the government to move to strike the juror. 35 F.4th at 516. There is no indication in the *Helton* opinion that the defense was not present during the entirety of the court's colloquy with the juror.

9

In contrast, the district court in the instant case conducted the entirety of its inquiry outside the presence of the parties and off the record. Indeed, perhaps because it realized that excluding the parties from the conversation had been erroneous, the district court, both in an after-the-fact email and on the record the next day, attempted to contradict its previous email of January 30th at 3:25 p.m. that stated it had "decided to cut this juror now, and to return tomorrow with 15 jurors." (R. 292-2, Am. Order Completing Record, PageID 11640). Instead, following the January 30th, 3:25 p.m., email, and after the defense objected, the district court attempted to maintain that it "had not excused the juror" until after speaking with defense counsel. (Page ID 11643). Defense counsel immediately took issue with the district court's characterization, stating on the record that the defense had been told via the January 30, 3:25 p.m., email that "Juror No. 4 was already dismissed." (R. 197, Tr. 388, PageID 4947).

In the end, the January 30, 2023, 3:325 p.m., email speaks for itself and demonstrates that, contrary to *Gay,* the district court unilaterally excused Juror No. 4 via an ex parte proceeding that violated Fed. R. Crim. P. 43 (per *Gay*) as well as the Sixth Amendment.

By latching on to *De Oleo* and *Helton,* the panel relied on the fact that the district court in the instant case, like the district courts in *De Oleo* and *Helton,*

10

articulated a basis for excusing the juror(s) in those cases. But that misses the bigger point: The district courts did not abuse their respective discretion in those cases, not simply because they articulated a rationale for dismissal. Rather, the exercise of sound discretion is manifested as well in the process by which those conclusions were reached, i.e. by discussing the matter with the jurors in open court where the parties could hear what was happening and ask the district court to consider other circumstances if the parties deemed it appropriate. Exercising discretion is a process – not a result.

     Once again, if the panel does not reconsider, this Court should do so to address the intra-circuit split that has been created and to remind district courts of the need to *exercise* discretion via a process that is consistent with the adversarial system.

## CONCLUSION

Wherefore, Defendant prays that the panel reconsider or, alternatively, the Court, en banc, reconsider the panel decision.

>Respectfully submitted,
>
>*/s/ Steven L. Bradley*
>STEVEN L. BRADLEY (0044622)
>Marein & Bradley, LLC
>1300 East 9th Street, Suite 1000
>Cleveland, Ohio 44114
>PHONE: (216)781-0722
>FAX: (216)781-6010
>steve@mareinandbradley.com

## CERTIFICATE OF COMPLIANCE

In compliance with the Federal Rules of Appellate Procedure 32(a)(7)(B) and (C), I hereby certify that the foregoing contains 2,414 words as determined by the word-count application utilized in the preparation of this pleading.

>Respectfully submitted,
>
>*/s/ Steven L. Bradley*
>STEVEN L. BRADLEY

## CERTIFICATE OF SERVICE

A copy of the foregoing was delivered to counsel of record via the Court's electronic filing system at the time of filing.

*/s/ Steven L. Bradley*
STEVEN L. BRADLEY
